UNITED STATES, Appellee,

v.

Michael R. SHROEDER, Corporal, U.S. Marine Corps, Appellant.

No. 58,638.

NMCM 86 4317.

U.S. Court of Military Appeals.

Sept. 29, 1988.

Certiorari Denied Feb. 21, 1989.
See 109 S.Ct. 1121.

For Appellant: *Commander J. A. Williams*, JAGC, USN and *Lieutenant Jeffrey S. Horwitz*, JAGC, USNR (argued); *Lieutenant Commander R. J. Smith*, JAGC, USN.

For Appellee: *Major Laura L. Scudder*, USMC (argued); *Captain Wendell A. Kjos*, JAGC, USN (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

As a result of the brutal slaying of a couple in their home on Okinawa, appellant was charged with felony murder and other offenses. The charges were referred as noncapital to a general court-martial with officer members. On the basis of evidence establishing Shroeder's guilt as an aider and abettor, he was convicted of two speci-

fications of murder while engaged in the perpetration of robbery and two specifications of robbery, in violation of Articles 118(4) and 122, Uniform Code of Military Justice, 10 U.S.C. §§ 918(4) and 922, respectively. The sentence adjudged was life imprisonment, a bad-conduct discharge, forfeiture of $300.00 pay per month for 36 months, and reduction to the lowest enlisted grade. After receiving petitions for clemency from all the court members, the convening authority reduced the period of confinement to 25 years but otherwise approved the trial results. The Court of Military Review affirmed in a memorandum opinion.

The issues we have granted, which concern the voting requirements in a felony-murder case, are:

## I

WHETHER THE MILITARY JUDGE ERRED BY FAILING TO INSTRUCT THE MEMBERS, AS REQUIRED BY R.C.M. 1006(d)(5), THAT A SENTENCE WHICH INCLUDES CONFINEMENT FOR LIFE MAY ONLY BE ADJUDGED IF AT LEAST THREE-FOURTHS OF THE MEMBERS PRESENT VOTE FOR THAT SENTENCE.

## II

WHETHER APPELLANT'S CONVICTION OF FELONY MURDER CAN STAND WHERE HE WAS CONVICTED BY LESS THAN THE THREE-FOURTHS MAJORITY REQUIRED TO SENTENCE HIM TO LIFE IMPRISONMENT IN VIOLATION OF ARTICLE 52(b)(2), UCMJ, 10 U.S.C. § 852(b)(2), WHERE THAT SENTENCE IS THE AUTOMATIC MINIMUM UPON SUCH A CONVICTION.

We decide both issues against appellant.

## I

Prior to findings, the military judge instructed the court members that, to convict Shroeder, they must find him guilty by a two-thirds vote—in this case, four of the six members. The defense made no objection to the instructions; and, in due course, appellant was convicted of the two felony murders and the two robberies.

Before sentence was adjudged by the members, the military judge advised them that, under the provisions of the Uniform Code, the sentence must include life imprisonment. He further instructed that the sentence in its entirety had to receive the votes of three-fourths of the members—five out of six. Again, the defense made no objection. The sentence was announced and was accompanied by a recommendation for clemency on the sentence work sheet. Also, after trial, every member of the court-martial wrote the convening authority to recommend that he exercise clemency as to the confinement adjudged.

## II

Article 118 provides that an accused who is found guilty of murder "in the perpetration ... of ... robbery" or certain other specified offenses "shall suffer death or imprisonment for life as a court-martial may direct." Article 52(b), UCMJ, 10 U.S.C. § 852(b), requires the unanimous vote of the court members for adjudging a death sentence; "the concurrence of three-fourths of the members present at the time the vote is taken," if an accused is "sentenced to life imprisonment or to confinement for more than ten years"; and "the concurrence of two-thirds of the members present at the time the vote is taken" for all other sentences.

Appellant contends that an inconsistency exists between the provision in Article 118 for a mandatory minimum sentence and the requirement in Article 52(b) for a three-fourths vote of the members present if life imprisonment is adjudged. This contention may be restated as a question: Why did Congress let the members vote on a sentence which is mandatory?

Appellant would resolve the claimed inconsistency by having the military judge make no reference to mandatory life imprisonment but simply instruct the court

members that they may adjudge confinement for life only by a three-fourths vote of the members present. Moreover, the defense claims that such advice to the members would conform with R.C.M. 1006(d)(5), Manual for Courts-Martial, United States, 1984, which provides that "[w]hen a mandatory minimum is prescribed under Article 118 the members shall vote on a sentence in accordance with this rule." Obviously, if the defense contention is accepted, the mandatory minimum contained in Article 118 becomes a dead letter.

Article 106 of the Code, 10 U.S.C. § 906, authorizes a mandatory death sentence for "spies"; but Article 52(b)(1) requires "the concurrence of all the members of the court-martial present at the time the vote is taken." Article 52(b)(1) contains no express provision that the court members are not required to vote when the death sentence is mandatory; but the President apparently has concluded that, for a mandatory death sentence, no vote by the members on sentence is necessary and that the military judge should simply announce the death sentence. *See* R.C.M. 1004(d). If, on the other hand, a vote by the members was intended by Congress even in mandatory death cases, we are sure that it was never intended to mitigate the mandatory death sentence imposed under Article 106 by having the members of the court-martial vote without being instructed that the sentence there adjudged must include death. Likewise, we conclude that the requirement in Article 52(b)(2) that there must be a three-fourths vote of the members in favor of a sentence "to life imprisonment or to confinement for more than ten years" was not intended to negate the mandatory minimum confinement for life prescribed by Article 118 by preventing the judge from instructing the court members that the sentence must include life imprisonment.

At a rehearing, "no sentence in excess of or more severe than the original sentence may be imposed, unless the sentence is based upon a finding of guilty of an offense not considered upon the merits in the original proceedings, *or unless the sentence prescribed for the offense is mandatory.*" *See* Art. 63, UCMJ, 10 U.S.C. § 863 (emphasis added). Apparently, Congress contemplated that, if a sentence below the mandatory minimum were adjudged, the convening authority would set it aside and order a rehearing—wherein the mandatory minimum sentence would be imposed. Similarly, the President has directed that, upon "reconsideration" of a sentence, there should be no increase in the sentence announced, "unless ... [it] was less than the mandatory minimum prescribed for an offense of which the accused has been found guilty." *See* R.C.M. 1009(b). Thus, a way is provided for the members of the court-martial who have adjudged the illegal sentence to correct it promptly.

If, as here, the military judge instructs the court members that they must adjudge a minimum sentence of life imprisonment, as prescribed by Article 118, the need is greatly reduced for utilizing a rehearing on sentence or a reconsideration of sentence as a means to impose the mandatory sentence which Congress prescribed. While these means are available to effectuate the requirements of Article 118, we have no doubt that Congress preferred that the mandatory sentence be adjudged initially—rather than for an illegal sentence to be adjudged and then corrected by a rehearing or reconsideration.

The fundamental fallacy in appellant's argument is that it assumes an inconsistency between Articles 52(b) and 118 which does not exist. A court-martial sentence may include other punishments besides confinement; and so, even if the court members are instructed that they must adjudge a sentence which includes confinement for life, they still have an area in which to exercise their sentencing discretion. What forfeitures and what type of discharge should be adjudged? Indeed, in this very case, the court members exercised their discretion by imposing partial forfeitures for 3 years, rather than total forfeitures, and a bad-conduct, rather than a dishonorable, discharge.

The mandatory minimum sentence does not entirely deprive the court members of a role in determining what confinement the accused will serve. As in this case, they are free to recommend that clemency be granted as to the mandatory life sentence; and this recommendation was considered by the convening authority—who exercised his unreviewable discretion to grant clemency—as well as by the Court of Military Review and by clemency and parole officials. *United States v. Healy*, 26 M.J. 394 (C.M.A.1988).

■ Admittedly, since the court members must vote on the sentence, they can engage in "jury nullification" and can adjudge a sentence of less than the minimum confinement prescribed by the Code. Of course, such action—which the military judge's instruction was intended to forestall—would be irresponsible as well as unlawful and certainly should not be encouraged.[1] *See United States v. Mead*, 16 M.J. 270, 275 (C.M.A.1983). Thus, we think it was entirely appropriate for the military judge to instruct—as required by R.C.M. 1005(e)(1)—that, because Shroeder had been found guilty of felony murder, any sentence adjudged by the court members must include confinement for life.

### III

■ Article 52(a) provides that "[n]o person may be convicted of an offense for which the death penalty is made mandatory by law, except by the concurrence of all the members of the court-martial present at the time the vote is taken" and that "[n]o person may be convicted of any other offense, except" by the military judge pursuant to a guilty plea "or by the concurrence of two-thirds of the members present at the time the vote is taken." Appellant argues that to allow conviction of felony murder by a two-thirds vote of the members is inconsistent with the voting requirements prescribed by Article 52(b) for sentencing and with the mandatory minimum sentence requirement of Article 118. He would resolve the inconsistency by insisting on a three-fourths vote for conviction of a felony murder or of any other crime for which life imprisonment is mandatory.[2]

Long ago this Court, rejecting a similar argument, held that only a two-thirds vote was required to convict of premeditated murder, even though Article 52(b)(2) called for a three-fourths vote of the members to impose a life sentence. *United States v. Walker*, 7 U.S.C.M.A. 669, 23 C.M.R. 133 (1957). Since that time no change has been made in the relevant provisions of the Code, so we assume that Congress was content with our interpretation.

Perhaps it would be desirable to have the same voting requirements for members to convict of a crime and to sentence the accused for that crime. Indeed, under Article 52 only a two-thirds vote is required to convict of all offenses other than those for which death is mandatory; and, unless the sentence adjudged is 10 years or more, only a two-thirds vote is required for the sentence. Moreover, in the 1984 Manual, *supra*, the President—exercising his powers as Commander-in-Chief, *see* Drafters' Analysis, Manual, *supra* at A 21–65, February 1986 Amendment—has mandated that, if an accused is convicted of a crime for which the death sentence is authorized but not mandatory, a death sentence may not be adjudged unless the accused was found guilty by unanimous vote of the court-martial members. *See* R.C.M. 1004(a)(2).

■ Even so, we remain convinced that the language of the Code and of the Manual is clear and in all cases requires only a two-thirds vote to convict—unless a death

---

1. As already noted, if such action is taken by the court members, it can be rectified by reconsideration pursuant to R.C.M. 1009 or by a rehearing under Article 63.

2. Currently, the only mandatory sentences prescribed by the Code are the mandatory death sentence for "spies," *see* Article 106, and the mandatory minimum sentence for life imprisonment if the accused is found guilty of premeditated murder or felony murder, *see* Article 118.

sentence is mandatory or, if not mandatory, is actually adjudged. We perceive nothing arbitrary or irrational in this arrangement. As we noted in *Walker*, the "acts of voting" on findings and sentence are "separate and distinct," *see* 7 U.S.C.M.A. at 674, 23 C.M.R. at 138. Not only do they occur at different times, but they differ in other ways.

The vote on the findings concerns whether the Government has proved beyond reasonable doubt that the accused was guilty of certain crimes. The vote on the sentence involves moral judgments of the court members, their predictions as to the rehabilitation of the accused and the deterrence of others that will result from various permissible sentences, and many other factors. We do not see why the factual evaluation and the determination of an appropriate sentence must necessarily be made by the same percentage of the members' votes.

Currently military law does distinguish between the capital and the non-capital case in prescribing the voting percentages required for conviction. We find nothing arbitrary in making this distinction; and, indeed, the unique treatment of capital cases is well-recognized in the law.

█ Moreover, we believe that Congress could lawfully have gone further and made gradations in the voting percentages for convictions that would parallel the gradations in the voting percentages applicable in determining what sentence may be imposed in a case. However, such a system would be very difficult to administer—and especially so since, in courts-martial, there is a unitary sentence and often many unrelated offenses are joined for trial. Thus,

we are convinced that a rational basis exists for the Code's current requirement of a two-thirds vote to convict of any offense except one for which the death sentence is mandatory; and so this requirement does not create an equal protection or other constitutional problem.

We also see nothing arbitrary in the requirement of Article 52(b) that sentences of 10 years or more must command a three-fourths majority of the court members' vote—instead of only the two-thirds majority necessary to convict. Constitutionally, Congress was free to decide either that voting percentages for sentences should parallel the severity of the sentence to be adjudged or, instead, to mandate that—at least, apart from capital cases—the same voting percentages would apply to all sentences.

In sum, appellate defense counsel have not shown us any reason to depart from the interpretation which this court gave more than three decades ago to the Code's voting requirements, *see United States v. Walker, supra*—an interpretation which was predicated on the plain language of the Code. Accordingly, we are convinced that the military judge did not err in instructing the court members that only a two-thirds vote was required to convict Shroeder of the offenses charged.[3]

IV

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judges COX and SULLIVAN concur.

---

**3.** We do not know whether, in fact, more than two-thirds of the court members voted to convict. In view of our interpretation of the Code, it is unnecessary to inquire whether findings of guilty could be sustained if, in a post-trial hearing convened pursuant to *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967), the Government could prove that the court members had voted for conviction by a vote of more than two-thirds.